UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES D. PIRIE, II,

      Plaintiff,

v.                            CASE No. 8:13-CV-733-T-TGW

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

      Defendant.

_____

O R D E R

      The plaintiff in this case seeks judicial review of the denial of his claim for expedited reinstatement of his Social Security disability benefits.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

I.

      In 2002 the plaintiff filed a claim for Social Security disability benefits, alleging that he became disabled due to a heart operation (Tr. 148).

_____

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 12).

The claim was granted with a disability onset date of June 22, 2002. The plaintiff, however, engaged in part-time work in succeeding years. This work activity did not come to the attention of the Social Security Administration ("SSA") until 2009 (Tr. 28). By a notice of October 19, 2009, the SSA advised that disability would therefore cease. The plaintiff requested reconsideration of that determination. In addition, the plaintiff requested expedited reinstatement of his disability benefits. After that request was denied initially and on reconsideration, the plaintiff requested a hearing on the denial of expedited reinstatement before an administrative law judge.

> After a hearing the law judge stated (id.):

> The matter at hand is rather convoluted and implicates three separate issues that remain in dispute. As discussed below, the undersigned appears to have jurisdiction of only one of these three issues.

The law judge concluded that the only issue properly before him was the denial of the request for expedited reinstatement because, as to that claim, the earlier steps in the administrative process had been exhausted. He stated that an issue of cessation of benefits, as well as a claim for overpayment of

benefits, had not been through the reconsideration stage and therefore were

not ripe for his determination (Tr. 29).

    With respect to the claim for expedited reinstatement, the law

judge pointed out (Tr. 30):

> The Social Security Administration's POMS
> [Program Operations Manual System] indicates
> that a medical determination under the expedited
> reinstatement process is, at first, a two-part test:
>
> -     The current impairment(s) must be the same
>       as or related to that which formed the basis
>       of the most recent disability entitlement;
>       and,
> -     The claimant must be under a disability
>       using the medical improvement review
>       standard (MIRS) normally used in a
>       continuing disability review (CDR) in
>       determining this (POMS DI 28057.015(A)).
>
> Social Security Administration policy further
> instructs that for a same as or related to finding, the
> current impairment(s) must be the same as or
> related to the impairment(s) at the time of the most
> recent disability entitlement (*i.e.*, the comparison
> point determination/decision [CPD]) (POMS DI
> 28057.015(C)(2)).

The law judge explained further that, if a "same as or related to" finding is

made, he is to conduct an eight-step inquiry involving the test for medical

improvement (as distinct from the five-step sequential analysis used in typical

Social Security cases). The law judge then set forth the eight steps (Tr. 30-

31).

Accordingly, the law judge evaluated the claim for expedited

reinstatement under the tests that he had explained. As a result of that

evaluation, the law judge made the following findings (Tr. 31-35):

> 1. Some, yet not all, of the claimant's current
> impairments are the same as or related to that
> which formed the basis of the most recent disability
> entitlement.
>
> 2. The most recent favorable medical decision
> finding that the claimant was disabled is the
> determination dated November 18, 2002. This is
> known as the "comparison point decision" or CPD.
>
> 3. At the time of the CPD, the claimant had the
> following medically determinable impairments: a
> variety of cardiac impairments, including coronary
> artery disease, status-post four-vessel coronary
> artery bypass grafting, status-post aortic valve
> replacement, status-post atrial flutter, and
> cardiomyopathy; and, degenerative disc disease of
> the lumbar spine, with history of lumbar
> laminectomy. These impairments were found to
> result in the residual functional capacity to perform
> a reduced range of light work, with stand/walking
> only three to four hours in an eight-hour workday;
> no climbing of ladders, ropes, or scaffolds; only

-4-

occasional climbing of ramps and stairs; occasional balancing, kneeling, stooping, crouching, and crawling; and, a need to avoid concentrated exposure to extreme heat, extreme cold, and hazards (including machinery and open heights).

4. Since February 1, 2010, the claimant did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. Medical improvement has occurred (20 CFR 404.1594(b)(1)).

...

6. After careful consideration of the entire record, the undersigned finds that, as of February 1, 2010, and considering only those impairments related to the previous entitlement to Title II, the claimant had the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c).

...

7. The claimant's medical improvement is related to the ability to work because it resulted in an increase in the claimant's residual functional capacity (20 CFR 404.1594(c)(3)(ii)).

...

8. As of February 1, 2010, the claimant's impairments were severe (20 CFR 404.1594(f)(6)).

9. For the purposes of this decision, the claimant has no past relevant work (20 CFR 404.1565).

10. On February 1, 2010, the claimant was an individual closely approaching retirement age (20 CFR 404.1563).

11. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

12. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).

13. As of February 1, 2010, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).

...

14. The claimant's disability ended as of February 1, 2010 (20 CFR 404.1594(f)(8)).

Upon the plaintiff's request for review, the Appeals Council let the law judge's decision on the request for expedited reinstatement stand as the final decision of the Commissioner.

II.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.  Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff's complaint only seeks judicial review pursuant to 42 U.S.C. 405(g) of a decision by the Commissioner "denying Plaintiff's application for Social Security Disability benefits for lack of continued disability" (Doc. 1).   Section 405(g) pertinently provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days ...."  Thus, under §405(g), judicial review is

limited "to a particular type of agency action, a '<u>final decision of the [Commissioner] made after a hearing</u>'." <u>Califano</u> v. <u>Sanders</u>, 430 U.S. 99, 108 (1977) (emphasis added). The only decision that comes within §405(g)'s authorization of judicial review is the denial of the request for expedited reinstatement since that was the only decision made by the law judge after a hearing.

The plaintiff, however, devotes most of his memorandum to complaining about the handling of his request for reconsideration of his cessation of benefits (Doc. 18, pp. 3-8) which, importantly, is a different issue than his request for expedited reinstatement. The law judge determined that the SSA had failed to issue a reconsideration determination on the plaintiff's request for reconsideration (Tr. 29), and that therefore the issue of cessation of benefits was not properly before him (Tr. 28, 29, 35). Consequently, the law judge did not make a ruling on that issue. And in the absence of a final decision by the law judge made after a hearing, this court does not have any jurisdiction under §405(g) – the only jurisdictional basis for judicial review, <u>see</u> 42 U.S.C. 405(h) – for review of the issue of cessation of benefits.

It is recognized that the plaintiff contends that the law judge should have considered the issue of cessation of benefits because he was incorrect in thinking that there had not been a reconsideration determination on that issue (Doc. 18, p. 3). Thus, the plaintiff asserts that "[t]he Administration made a determination of cessation of benefits on reconsideration on August 11, 2010 [Tr. 41]." That assertion is erroneous. The document cited expressly concerned the "Expedited Reinstatement" (Tr. 41, item 24).

Moreover, the Commissioner points out that plaintiff's counsel sent a letter to the SSA which seemingly acknowledged that administrative remedies were not exhausted on the issue of cessation of benefits. The letter stated (Tr. 21):

> The Honorable B.T. Amos, Administrative Law Judge, ruled on 12/01/11 that he was considering only the denial of the Request for Expedited Reinstatement and specifically stated he did not have jurisdiction over the cessation or overpayment waiver matters because he says no administrative determinations had been made. This appears to have occurred because of the Request for Expedited Reinstatement.

> Judge Amos appears to be asking for a determination by the Agency on the Request for Reconsideration and Request for Waiver. I know that requests for reconsideration in cessation cases usually involve a hearing by the State Agency before a hearing officer of the State Agency. Please get this process reactivated and let us know when that happens.

In sum, there was not a reconsideration determination decision on the issue of cessation of benefits. Therefore, the law judge did not have authority to rule upon that issue.

The plaintiff argues that, if the cessation issue was not ripe for a hearing by the law judge, the Commissioner's refusal to process further the plaintiff's appeal of cessation of benefits was error (Doc. 18, p. 6). However, the plaintiff has not identified any jurisdictional basis for court review of the contention. The argument certainly does not come within the narrow limitation of §405(g) concerning review of final decisions of the Commissioner made after a hearing. And, as indicated, the plaintiff has not suggested any other jurisdictional basis for judicial review of the alleged error. See 42 U.S.C. 405(h).

Moreover, there is nothing in the typical bare-bones complaint that alleges an error by the SSA concerning the processing of the cessation of benefits matter (see Doc. 1). The complaint has just enough to raise the claim regarding the denial of expedited reinstatement. As the Commissioner correctly points out, that is the only issue raised by the complaint.

With respect to the denial of expedited reinstatement, which, as indicated, is the only issue that this court has jurisdiction to review, the plaintiff's memorandum devotes little more than half a page to that contention. The plaintiff does not challenge the law judge's determination that in connection with the request for expedited reinstatement the only impairments the law judge was to consider were the plaintiff's cardiac problems and a history of a lumbar laminectomy. Further, the plaintiff has not made any specific argument directed to the law judge's findings on the eight-step analysis regarding medical improvement.

The plaintiff does raise a separate contention that the Commissioner's determination that the plaintiff engaged in substantial gainful activity is not supported by the evidence (Doc. 18, p. 8). That determination, however, was made by the SSA at the beginning of the review process. When

-12-

the matter reached the law judge, he made no such finding. To the contrary, that is the first step in the eight-step evaluation and the law judge would have stopped the evaluation at that step if the law judge had found that the plaintiff was engaging in substantial gainful activity (Tr. 30). The law judge continued past that step and in fact went to the end of the eight-step analysis. Thus, there was no final decision of the Commissioner that the plaintiff was engaging in substantial gainful activity.

The one pertinent issue raised regarding the expedited reinstatement is stated as "[t]he ALJ failed to properly evaluate claimant's symptoms and credibility" (Doc. 18, p. 9). This argument focuses on the plaintiff's allegation of shortness of breath due to his heart condition. This contention lacks merit.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that

-13-

condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and he referred to the pertinent regulations and Social Security rulings (Tr. 32). He even cited the pain standard set out in Landry v. Heckler (id.). This demonstrates that the law judge employed the proper analysis. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Moreover, the law judge articulated his application of the Eleventh Circuit standard as follows (Tr. 32):

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be

-14-

expected to cause some of the alleged symptoms. However, the statements of record concerning the intensity, persistence, and limiting effects of the claimant's symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The law judge then reviewed the recent medical evidence concerning the plaintiff's cardiac condition (Tr. 33).[2] Having considered the recent evidence relating to the plaintiff's heart condition, the law judge stated (Tr. 33-34):

Therefore, while the claimant has alleged having continuing heart problems (Exhibit 10E), while he has claimed that he tires easily and stays in bed often and continues to have heart palpitations (Exhibit 12E), and while he claims that his heart limits his "physical activity" and leads to shortness of breath (Exhibits 14E and 16E), the medical evidence does not entirely support these statements. The claimant's condition appears "stable" and he has been described as "doing well." His allegations at Exhibits 21E and 24E of difficulties with and side effects from Warfarin - a drug the claimant takes related to these ailments - are also not supported by the record evidence because the undersigned fails to see these

---

[2]The law judge also noted that there was a history of lumbar spine problems that were referenced in 2002 when the disabled finding was made (Tr. 33). He pointed out there were "no such complaints during the present period" (id.).

complaints being offered to medical professionals. Finally, the Administrative Law Judge notes the fact that the claimant only stopped working secondary to problems unrelated to his disabling impairments (Exhibit 19E). This work was as a dietary aide, which the <u>Dictionary of Occupational Titles</u> (<u>DOT</u>) characterizes as medium work in the national economy (<u>DOT</u> 319.677-014). Hence, the undersigned finds that a medium residual functional capacity is appropriate. The only opinions of record as to this issue, those of the State agency at Exhibits 7F and 11F, are in accordance with this finding.

In addition, amplifying the law judge's point that the plaintiff regularly denied shortness of breath to his treating physician (Tr. 33), the Commissioner cites to those numerous instances in her memorandum (Doc. 19, p. 8). Also, the plaintiff was seen as a new patient by Dr. Andrew P. Villamagna on May 28, 2011, and at that time the doctor noted "No dyspnea" (Tr. 466).

The evidence therefore supports the law judge's determination to discount the plaintiff's allegation of shortness of breath. The plaintiff's cursory assertion regarding that allegation certainly does not compel the conclusion that the plaintiff cannot perform medium exertional work due to shortness of breath. See <u>Adefemi</u> v. <u>Ashcroft</u>, <u>supra</u>. And since that was the

-16-

only contention challenging the denial of the expedited reinstatement that has been raised by the plaintiff, his challenge fails.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**.  The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this _18th_ day of March, 2014.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

-17-